JOHN BALLARD ET AL. V. OLEF HANSEN.          33 861
                                             f60 784

[FILED FEBRUARY 17, 1892.]

1. **Adverse Possession:** EVIDENCE. Upon the evidence presented in the record, *held*, that the title of the plaintiff by adverse possession was clearly established.

2. ———: INSTRUCTIONS examined, and *held*, not prejudicial to the defendant below.

3. ———: THE WORD "HOSTILE," when applied to the possession of an occupant of real estate holding adversely, is not to be construed as showing ill-will, or that he is an enemy of the person holding the legal title, but means an occupant who holds, and is in possession, as owner, and therefore against all other claimants of the land.

4. ———: NOT INTERRUPTED BY TRESPASS. A stranger who neither has nor claims an interest in the land, or the possession thereof, cannot, by a mere trespass or surreptitious entry, interrupt the running of the statute in favor of the actual occupant.

5. ———: INSTRUCTIONS asked by the defendant, even when modified, were prejudiced to the plaintiff below and not to the defendant below.

ERROR to the district court for Douglas county. Tried below before HOPEWELL, J.

*Congdon & Hunt,* for plaintiffs in error, cited: *Edmonston v. Shelton,* 4 Jones [N. Car.], 451; *Baldwin v. Buffalo,* 35 N. Y., 375; *Cook v. Babcock,* 11 Cush. [Mass], 209; *Riley v. Jameson,* 3 N. H., 26; *Lund v. Norcross,* Id., 50; *Jackson v. Sharp,* 9 Johns. [N. Y.], 167; *Bates v. Norcross,* 14 Pick. [Mass.], 228; *Kirk v. Smith,* 9 Wheat. [U. S.], 241*; *Russell v. Davis,* 38 Conn., 562; *Unger v. Mooney,* 63 Cal., 586; *Armstrong v. Morrill,* 14 Wall. [U. S.], 120; *Groft v. Weakland,* 34 Pa. St., 308; Angel, Limitations [2d Ed.], 447; *Little v. Downing,* 37 N. H., 367.

*Lake & Hamilton, contra,* cited: *Stettnische v. Lamb,* 18 Neb., 619; *Clark v. Potter,* 32 O. St., 49; *Donovan v. Bissell,* 53 Mich., 462; *De La Vega v. Butler,* 47 Tex., 529; *Hughes v. Pickering,* 14 Pa. St., 297; *Harper v. Tupley,* 35 Miss., 506; *Crispen v. Hannavan,* 50 Mo., 536; *Duren v. Sinclair,* 22 S. Car., 361; *Hardy v. Riddle,* 24 Neb., 673.

MAXWELL, CH. J.

This action was brought by the defendant in error against the plaintiff in error in the district court of Douglas county, to recover the possession of blocks 231, 234, and 238, composing twenty-four lots, in the city of Florence. Hansen's claim to nearly all the lots is based upon adverse possession. The plaintiff in error disclaimed title to nine and a half of the lots. On the trial of the cause the jury returned a verdict in favor of Hansen for "lots 1, 2, 3, 4, 6, 7, and 8 in block 231, lots 1, 2, 3, 4, 5, 7, and 8 and the undivided half of lot 6 in block 234, and lots 1, 2, 3, 4, 5, 6, 7, and 8 in block 238, and found for the defendant below as to the residue, viz., lot 5 in block 231 and the undivided half of lot 6 in block 234; and a motion for a new trial having been overruled, judgment was entered on the verdict."

It is claimed on behalf of the plaintiff in error that the verdict is not sustained by sufficient evidence. We think differently, however. The verdict seems to be based upon and is fully sustained by the evidence.

Objections are made to certain instructions, which will be considered together. The instructions of the court were as follows: "This is an action in ejectment brought by the plaintiff to recover from the defendants the possession of blocks numbered 231, 234, and 238, in the city of Florence, Douglas county, Nebraska, and damages for the alleged wrongful detention thereof. The plaintiff, in his

petition, claims to have a legal estate in the premises in controversy, and to be entitled to the possession thereof; that the defendants, since the 17th day of February, 1888, have unlawfully kept, and still keep, the plaintiff out of possession, to his damage in the sum of $1,000. Judgment is prayed for possession of the premises and damages in the said sum of $1,000.

"2. The defendants, by their answer, each make general denial of the allegations of the plaintiff's petition except that the defendant, the Florence Land & Trust Company, is a corporation organized under the laws of Nebraska, which they admit.

"3. It is admitted by the parties that the land in controversy was patented by the United States and by the patentee sold to the 'Old Florence Land Company,' and by it surveyed and platted, and that each block is subdivided into eight lots, numbered from 1 to 8, inclusive.

"4. The defendants disclaim title or the right of possession to the following lots: Lot 3 in block 231, lots 1, 4, 7, and 8 and undivided half of lot 6 in block 234, lots 2, 4, 5, and 7 in block 238, and conceded the claim of plaintiff in regard thereto. You should therefore find for the plaintiff as to those lots.

"5. The plaintiff disclaims as to lot 5 in block 231 and the undivided half of lot 6 in block 234. As to these you should find for the defendants.

"6. The lots remaining in controversy are as follows: 1, 2, 4, 6, 7, and 8 in block 231, 2, 3, 5, and 6 in block 234, 1, 3, 6, and 8 in block 238. The rights of the parties thereto you are to determine from the evidence under the instructions of the court.

"7. The plaintiff does not claim to have perfect title by deed to the lots in controversy, but bases his claim on color of title—that is, deeds which purport to convey the same to him, but which are either void on their face or else are not shown to have been executed by parties who had title

to the property described in them for the full statutory period, as will be hereafter described to you.

"8. The jury are instructed that the defendant has shown such title in itself, or in other parties as will entitle it to the possession of the lots in controversy as specified in instruction 6, unless you find, under instructions hereafter given, that the plaintiff has shown in himself a title by adverse possession.

"9. The jury are further instructed that adverse possession, as relied upon by the plaintiffs in this action, is the open, actual, exclusive, notorious, and hostile occupancy of land, and claim of right, with the intention to hold it as against the true owner and all other parties, such occupancy, if continuous for the period of ten years, ripens into a perfect title, after which it is immaterial whether the possession be continued or not.

"10. By open and notorious possession is meant such an occupancy as would indicate to a stranger or passer-by that some one was claiming the premises. It would be evidenced by acts of ownership or control, such as making improvements thereon, cultivating the ground, leasing it to others. If you find and believe from a preponderance of the testimony in this case that the plaintiff, either by himself or in connection with his grantors from whom he procured deeds, giving color of title as heretofore explained, was in the actual, open, notorious, exclusive, continuous possession of any of the lots in controversy for the period of ten years, claiming to own them and to hold them as against all others, then as to such lots you are instructed the plaintiff acquired perfect title by advere possession, and as to such lots he is entitled to recover in this action.

"11. The jury are instructed that if they believe from the testimony that at the time of the entry of the plaintiff, or any of his grantors, into the possession of any of the lots in controversy, that such entry and occupancy lacked the element of hostility of the rights of the true owner,

Ballard v. Hansen.

and that such occupant did not, at the time of taking possession of the same, claim to own it, or to hold it as against the rightful owner, then in that event it is your province to inquire and determine from the evidence at what time, if at all, such occupancy becomes hostile—that is, at what time the occupant first did claim to hold the same as his own; and if you shall find that any of the lots in suit were not so held in hostility to the title of the true owner and all others for the full period of ten years prior to the 17th day of February, 1888, then as to such lots you should find for the defendant.

"12. It is the province of the jury to decide as to the weight of testimony and the credibility of the witnesses. You should consider carefully the testimony of the several witnesses and harmonize the whole evidence, so far as it can be done, but where there is a conflict of testimony that cannot be reconciled, it is for you to say who are the more worthy of belief. In making up your minds in this regard you should take into account the appearance of the witnesses while on the stand, the interest, bias, or prejudice they may show, their opportunity of knowledge as to the things concerning which they testify, and from the whole testimony make up your minds as to what your verdict shall be.

"13. If the jury shall find for the plaintiff as to any of the lots in controversy mentioned in instruction 6, then you should inquire and determine from the testimony and allow him such damages as he had sustained by the wrongful detention thereof."

The word "hostile," which Webster defines as " belonging to an enemy; appropriate to an enemy; showing ill-will and malevolence, or a desire to thwart and injure; occupied by an enemy or a hostile people; inimical; unfriendly; as, a hostile force; hostile intentions; a hostile country; hostile to a sudden change" (Ed. of 1881, p. 640), does not correctly state the character of the occupancy

58

necessary to create adverse possession. There need be no ill-will, malevolence, or desire to injure any one, and the element of hostility in that sense does not necessarily enter into the case. What was meant, no doubt, was that the possession of the plaintiff below must be adverse or against the party holding the legal title. In this sense no doubt it may be sustained. The word seems to have come into use in this connection at a time when the statute of limitations was looked upon with disfavor, and the courts disposed, if possible, to defeat all claims of the adverse occupant. At the present time the statute is viewed with favor as one of repose. In most instances it will be found that the adverse occupant has entered under a claim of right, and where such occupation has been adverse, open, notorious, and exclusive for the statutory period, that is sufficient. The word "hostile," therefore, does not correctly express the character of the occupancy required, but as this was against the plaintiff below, the defendant below cannot complain on that ground. These instructions, except in the matter referred to, seem to state the law correctly, and to most of them no objections were made. A number of instructions were given at the request of the plaintiff which need not be noticed.

The defendant below asked instructions as follows:

"You are further instructed that if you find from the evidence that the inclosure around the property in controversy, or any of it, was removed or destroyed or allowed to go to ruin, and the premises in controversy, or any portion of them, were not cultivated by any one or occupied during the time such fence was destroyed or removed, and you believe them to have been abandoned, then the possession of the holder of the legal title was restored by operation of law, and the statute of limitation would only begin to run thereafter from the time such premises were inclosed or cultivated or occupied again; and if you find such condition of any of the premises to have existed

Ballard v. Hansen.

within ten years prior to the commencement of this suit, you must, as to such lot or lots, find for the defendants. Adverse possession must be shown by clear and positive proof, and unless you find from the evidence that the plaintiff or the parties through whom he claims were in the adverse possession, as previously described, of the property in controversy for the full period of ten years, without interruption or intrusion by third parties (under a claim of right) or abandonment, you should find for the defendant.

"12. If you find from the evidence that at any time within a period of ten years prior to the commencement of this suit any party or parties entered upon the possession of the property in controversy, or any portion of it, without let or hindrance from the plaintiff or those through whom he claims, and while so in possession used and occupied the premises or any portion of them as their own, and not as the tenant of the plaintiff or those through whom he claims, ('provided the plaintiff or his grantor last in possession prior thereto knew of such occupancy, and it is not shown that they objected thereto') then such possession and occupancy were an interruption of the running of the statute, and the plaintiff or those through whom he claims would, as to such property, have to renew their adverse occupancy of the same, and continue such occupancy for the statutory period of ten years; and if you find that there was such an interruption, and the possession of the plaintiff or those through whom he claims has not continued for the statutory period - since such interruption, then, as to such lot or lots, the possession of which was so interrupted, you must find for the defendant." The modification was as follows: "Given as modified by the addition of the words 'provided the plaintiff or his grantor last in possession prior thereto knew of such occupancy, and it is not shown that they objected thereto.'"

The mere intrusion of a trespasser is not an interrup-

tion. (*Bell v. Denson,* 56 Ala., 444; *Rayner v. Lee,* 20 Mich., 384; *Stettnische v. Lamb,* 18 Neb., 619; *Hughs v. Pickering,* 14 Pa. St., 297; *Hudgins v. Crow,* 32 Ga., 367; *Fugate v. Pierce,* 49 Mo., 441; *Crispin v. Hannavan,* 50 Id., 536; *De La Vega v. Butler,* 47 Tex., 529; *Harper v. Tapley,* 35 Miss., 506; Am. & Eng. Ency. of Law, 274.)

In *Haywood v. Thomas,* 17 Neb., 238: A portion of the fence around the inclosure was destroyed by fire, but was soon afterwards restored, and it was held no interruption. We do not understand that a mere stranger having no interest in the premises, and claiming none, can interrupt the running of the statute; certainly he would not do so stealthily by night, as it were, and claim that thereby he had defeated the plaintiff. The instruction, even as modified, was against the plaintiff below, and the defendant below has no cause of complaint on that ground. There is no error of which the plaintiff in error can complain, and the judgment is

AFFIRMED.

THE other judges concur.